*FOR PUBLICATION*

FILED
APR 09 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

JFLF

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

Bobby Harold Maxwell,

        Debtor.
_____/

Case No. 13-13383-A-13

Gerald Maxwell, trustee
of the Eldrige A. Coffman and
Madeline J. Coffman Revocable Trust,

        Plaintiff,

  vs.

Bobby Harold Maxwell,

        Defendant.
_____/

Adv. No. 13-1070-A

**OPINION**

Defalcation requires knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior. Defendant Bobby Maxwell, a trustee, allowed his wife, Cherie Maxwell, a bank officer, to access and handle trust funds. Cherie diverted some of the funds for personal use; Bobby was unable to account for other funds. Bobby was unaware of Cherie's diversion of trust funds. Has Bobby committed defalcation?

**FACTS**

Eldridge A. Coffman and Madeline J. Coffman, a married couple, owned 80 acres of farmland, a home, and other personal property. They created a living trust in which the Coffmans were the initial trustees and beneficiaries of the trust. The trust provides that Bobby, the Coffmans' nephew, would serve as the trustee after the death of both of the Coffmans and that the corpus of the trust would be distributed to the Coffmans' siblings.

Bobby became the trustee in 2007 after both Coffmans had died. Bobby worked as a corrections officer, and his wife at the time, Cherie, was a bank officer. Bobby relied heavily on Cherie, who is now deceased, to assist him with his financial duties as trustee. Cherie had access to and handled the trust funds.

During the four years that he acted as trustee, Bobby did very little to fulfill his duties as trustee or to administer or liquidate the trust principal. He did not contact the other beneficiaries of the trust nor provide them with copies of the trust. He did not file the trust's tax returns for the years 2007 to 2011.

Hoping the price of farmland would increase, Bobby leased the Coffmans' farmland to a third party. From 2008 to 2011, while Bobby

was the trustee, the price of the farmland decreased from about $1.20 million to about $1.04 million.  Bobby did not lease the Coffmans' former home.

Cherie diverted approximately $3,000 of trust funds for personal use.  Bobby and Cherie collected the rents from the farmland.  Bobby could not account for $52,791.75 of trust funds, a portion of which may have included missing farmland rents.  Bobby could not explain the missing farmland rents, but he testified that his wife handled the depositing of the rents and that he had no reason not to trust her.

In 2011, plaintiff Gerald Maxwell filed a petition in Tulare County, California, to compel Bobby to turn over a copy of the trust, to remove him as trustee, and to account for monies he had received and expenses he had paid.  By stipulation, Bobby was removed as trustee, and Gerald became the successor trustee of the Coffmans' trust.  After an accounting by Bobby, the Tulare County Superior Court issued a judgment for $214,038.86 against Bobby for breach of fiduciary duty.  The Tulare County Superior Court did not make findings on the issue of Bobby's intent.

Bobby filed a Chapter 7 bankruptcy.  Gerald filed the present adversary proceeding against Bobby for a determination of the nondischargeability of a debt for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).  Gerald contends that the trust corpus suffered loss for (1) ongoing expenses that continued to accrue after both Coffmans had died, such as health insurance premiums and utilities for the Coffmans' former home; (2) distributions, including $3,000, that Cherie had made to herself; (3) the decline in the farmland's value occasioned by delaying its sale;

(4) the missing $52,791.75 of trust funds, which may have included farmland rents, for which Bobby could not account; (5) increased administrative costs, such as costs for tax return preparation, resulting from Bobby's inaction; and (6) the interest and penalties incurred by the trust from Bobby's delays in filing tax returns and paying taxes due.

**JURISDICTION**

This court has jurisdiction. *See* 28 U.S.C. § 1334; General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

**DISCUSSION**

**I.   Nondischargeability Standards for Defalcation under § 523(a)(4)**

Bankruptcy Code § 523(a)(4) excepts from discharge debts for "defalcation while acting in a fiduciary capacity." *See* 11 U.S.C. § 523(a)(4). To except such a debt for defalcation from discharge, a creditor must prove by a preponderance of the evidence, *see Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 713 (B.A.P. 9th Cir. 1999), "that: 1) an express trust existed, 2) the debt was caused by . . . defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created," *see Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987) (citing cases).

Defalcation itself has two elements: a breach of a fiduciary duty and wrongful intent. A breach of a fiduciary duty is satisfied either by misappropriated trust assets or by failing to account for such assets. *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001) (citing *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996)). A fiduciary commits defalcation by using trust

4

property in a manner inconsistent with the duties and obligations imposed by the trust. *See Lovell*, 236 B.R. 709, 719 (B.A.P. 9th Cir. 1999) (holding that a debtor's violation of the legal duties and obligations under a trust created under both statute and case law constituted a defalcation under § 523(a)(4)).

Wrongful intent requires a culpable state of mind "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757 (2013). Reckless conduct qualifies as the equivalent of "actual knowledge of wrongdoing." *Id.* at 1759. A fiduciary's conduct is reckless "if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (quoting ALI, Model Penal Code § 2.02(2)(c), at 226 (1985)). "That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 1760 (emphasis in original) (quoting ALI, Model Penal Code § 2.02(2)(c), at 226 (1985).

## II. Inapplicability of Collateral Estoppel

Collateral estoppel applies in adversary proceedings to except a debt from discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "28 U.S.C. § 1738 requires [courts], as a matter of full faith and credit, to apply the pertinent state's collateral estoppel principles." *Cantrell v. Cal-Micro, Inc. (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003). California law permits application of the

doctrine only if five distinct elements are established:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (quoting *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990)).

In this case, the first and third elements described in *Harmon* have not been satisfied. The issues decided in the state court proceeding in Tulare County, California, did not relate to Bobby's intent and whether that intent was wrongful. Bobby's intent was also not necessarily decided in the former proceeding, as the judgment against him was for breach of fiduciary duty, which does not require a finding of wrongful intent. Collateral estoppel, therefore, does not preclude Bobby from relitigating the issue of his intent for purposes of Gerald's claim for nondischargeability of a debt for defalcation under § 523(a)(4).

## III. Absence of Wrongful Intent Defalcation

The court finds that Bobby neither had knowledge of, nor was grossly reckless with respect to, the improper nature of his actions. While Gerald has made a strong showing that Bobby breached his fiduciary duties, Gerald has offered little, if any, evidence, that he knew or consciously disregarded a substantial, unjustifiable risk that his actions violated such duties.

The court finds credible Bobby's testimony about his knowledge of his duties as a trustee. He simply did not know the scope of his

duties except for his duty to dispose of the trust's assets and divide up the proceeds of the trust assets for distribution to the beneficiaries of the trust. Additionally, he mistakenly thought he did not have a duty to dispose of the trust assets and distribute the proceeds to the beneficiaries until they requested that he do so.

The court's finding that Bobby lacked knowledge of his duties as trustee is buttressed by other facts. Bobby is not skilled in matters of trust law or trust accounting. Other than vocational classes, he has had no post-secondary education. His expertise lies in the field of corrections. Bobby had not read the Coffman trust in its entirety and had no previous experience as a trustee. Bobby did not have the benefit of professional guidance until 2011, when he hired counsel to assist him with his duties. Thus, the evidence supports his asserted ignorance of his duties pursuant to the trust.

Although the evidence presents the possibility that Bobby could have participated in Cherie's diversion of trust funds and that he could have intentionally diverted the funds for which he could not account, a more plausible and less nefarious explanation exists. Cherie, acting alone and without Bobby's knowledge or authority, converted trust funds for purposes inconsistent with the trust. Bobby's undisputed testimony was that Cherie handled the financial aspects of trust administration, including receiving and distributing funds.

Furthermore, Gerald has not shown that Bobby has engaged in conduct of the species that by its very nature necessarily imputes knowledge of its wrongfulness. The losses of which Gerald complains were occasioned by Bobby's acts and omissions that are not of the

species of breaches that by their very nature are inherently wrong or suggestive of a violation of one's fiduciary duties. *See Bullock*, 133 S. Ct. at 1759. Additionally, the diversion of $3,000 of trust funds and the apparent diversion of $52,791 of trust funds were occasioned by the affirmative actions of Cherie, not Bobby. There has been no evidence that Bobby was actually aware of Cherie's actions or that he authorized them.

Bobby's reliance on Cherie to handle financial aspects of the trust and deal with trust assets does not itself provide a basis for a finding that he had wrongful intent with respect to the trust funds that were diverted or the funds for which Bobby could not account. At trial, no testimony was offered to show that Bobby knew that Cherie's handling of trust funds was a breach of his duties. Nor does the court find that Bobby's allowing Cherie to access and handle trust funds is conduct of such a nature and degree that grossly deviates from the standard of conduct of a law-abiding trustee in Bobby's situation. *Bullock*, 133 S. Ct. at 1760. To the contrary, given that Bobby had no reason to distrust her, Cherie was a logical, if not entirely permissible, choice for handling financial aspects of the trust. She had worked as a banker for 20 years, 15 years of which she had served as a bank operations officer. And the court finds credible Bobby's testimony that he had no reason to distrust her.

Even assuming that Gerald had proven that Cherie acted knowingly or with gross recklessness with respect to her actions in diverting and misusing the trust funds, he has not provided sufficient facts to permit the court to impute her intent or gross recklessness to Bobby. "Where no agency relationship exists, the courts have not generally

imputed the wrongdoing of a nondebtor spouse to a debtor in holding a debt nondischargeable." *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192, 198 (B.A.P. 9th Cir. 2001). "[A] marital union alone, without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to the other." *Id.*

Even if an agency relationship existed between Bobby and Cherie, moreover, the court concludes that any wrongful intent on Cherie's part cannot be imputed vicariously to Bobby. Consistent with *Bullock*, Bobby's mental state must have been shown to be culpable with respect to Cherie's actions, whether by his knowledge and acquiescence in her conduct or by his gross recklessness as to a "substantial and unjustifiable risk" that her actions would violate his fiduciary duties. *Bullock*, 133 S. Ct. at 1757, 1759. Further, the bankruptcy appellate panel has recently held that the wrongful intent of an agent is not chargeable to the principal unless the principal knew or should have known of the agent's improper acts. *See Sachan v. Huh (In re Huh)*, 506 B.R. 257, 271-72 (B.A.P. 9th Cir. 2014) ("While the principal/debtor need not have participated actively in the fraud for the creditor to obtain an exception to discharge, the creditor must show that the debtor knew, or should have known, of the agent's fraud."). This court does not resolve whether a principal may be chargeable with the wrongful intent of an agent when the principal "should have known" of the agent's conduct or whether such a standard is consistent with the mental state that *Bullock* requires for a fiduciary to commit defalcation. Gerald has offered no evidence to show that Bobby either knew or should have known of Cherie's actions.

9

For each of these reasons, plaintiff Gerald Maxwell has not sustained his burden on the element of wrongful intent as to his defalcation theory. Since the showing of intent for fraud under § 523(a)(4) is at least as rigorous as that required for defalcation, *see Bullock,* 133 S. Ct. at 1757, Gerald has also not sustained his burden to show Bobby's fraud while acting in a fiduciary capacity, *see* 11 U.S.C. § 523(a)(4).

Judgment shall be entered in favor of Bobby. Counsel for Bobby shall prepare and lodge a judgment consistent with the findings herein.

Dated: April 9, 2014

Fredrick E. Clement
United States Bankruptcy Judge

# Instructions to Clerk of Court

## Service List

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _____ Other Persons Specified Below:

Joseph F. Soares, Esq.
HORSWILLL, MEDEROS & SOARES
791 North Cherry Avenue
Post Office Box 29
Tulare, California 93275

Patrick Kavanagh, Esq.
1331 L Street
Bakersfield, CA 93301